# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| DONATO APON, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
|        v. | )   2:17-cv-00335-JDL |
| | ) |
| ABF FREIGHT SYSTEMS, INC., | ) |
| | ) |
|    Defendant. | ) |

## ORDER ON MOTION TO DISMISS

The Plaintiff, Donato Apon, is a former employee of Defendant ABF Freight Systems, Inc. ("ABF"). Apon claims that ABF terminated his employment because he refused to sign a form acknowledging certain legal requirements related to ABF's trucking business. In his Amended Complaint, Apon alleges violations of the Maine Whistleblowers' Protection Act, 26 M.R.S.A. § 831, *et seq.* (2018) ("MWPA"), and the Maine Human Rights Act, 5 M.R.S.A. § 4551, *et seq.* (2018) ("MHRA"). ABF has moved to dismiss Apon's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted (ECF No. 7). For the reasons that follow, ABF's motion is **GRANTED** in part and **DENIED** in part.

## I. BACKGROUND

Apon worked for ABF from 1986 until his termination on February 19, 2016. On February 16, 2016, Apon's immediate supervisor, Derek Bell, instructed Apon to sign a document entitled "Leadership Responsibility Hours of Service and Meal Break Compliance Form" (the "Leadership Form"). The Leadership Form acknowledges the

signatory's responsibility for enforcing certain hours of service and meal break requirements contained in the Federal Motor Carrier Safety Act ("FMCSA"). 49 U.S.C.A. § 31131, *et seq.* (2018). The Leadership Form states that "[c]ompliance must be achieved through oversight, enforcement, and leadership of the *Branch Managers* and *Linehaul Managers*." ECF No. 6 at 1 (emphasis added). The Leadership Form refers to Branch Managers and Linehaul Managers throughout, but makes no mention of Apon's job title: Operations Supervisor. *Id.* at 1-2.

The Amended Complaint asserts that Apon refused to sign the Leadership Form because he believed that as an Operations Supervisor, and not a Branch Manager or Linehaul Manager, his signature on the form would violate state or federal transportation laws, rules, or regulations. Apon asked Bell for clarification about the Leadership Form, and asked to discuss the issue with Bell's supervisor. Bell offered no clarification and refused to contact his supervisor. Bell again asked Apon to sign the form, and when Apon refused, Bell sent him home.

Apon went on medical leave on February 16 and returned to work on February 29, at which time he was informed that his employment had been terminated effective February 19, 2016. ABF's termination letter to Apon states that he was terminated for his failure to sign the Leadership Form. ECF No. 5 at ¶ 24; ECF No. 6 at 3.

## II. MOTION TO DISMISS STANDARD

ABF moves to dismiss the Amended Complaint for failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint "must contain sufficient factual matter to state a claim to relief

that is plausible on its face." *Rodríguez–Reyes v. Molina–Rodríguez*, 711 F.3d 49, 53 (1st Cir. 2013) (internal quotation marks omitted). In evaluating a motion to dismiss, the Court will accept all well-pleaded facts as true and draw all reasonable inferences in the Plaintiff's favor. *Id.* at 52-53. Determining the plausibility of a claim is a context-specific task that requires the court "to draw on its judicial experience and common sense." *Id.* at 53 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

To establish a *prima facie* claim for retaliation under the MWPA, an employee must demonstrate that "(1) she engaged in activity protected by the statute; (2) she suffered an adverse employment action; and (3) there was a causal link between the protected activity and the adverse employment action." *Harrison v. Granite Bay Care, Inc.*, 811 F.3d 36, 46 (1st Cir. 2016) (citing *Costain v. Sunbury Primary Care, P.A.*, 954 A.2d 1051, 1053 (Me. 2008)). "[T]he employee's burden of proving a prima facie case of retaliation is relatively light, and requires only a small showing that is not onerous and is easily made." *Brady v. Cumberland Cty.*, 126 A.3d 1145, 1151 (Me. 2015) (internal quotation marks and citations omitted). "[T]he Court's role in a motion to dismiss is to determine only whether [the plaintiff] has surmounted the much lower bar of plausibly narrating a claim for relief." *Levitt v. Sonardyne, Inc.*, 918 F. Supp. 2d 74, 85 (D. Me. 2013) (internal quotation marks, alterations, and citation omitted). This is a relatively light burden. *Brady*, 126 A.3d at 1151.

### III. DISCUSSION

Apon's Amended Complaint contains a single count, which asserts two grounds of unlawful retaliation under the MWPA. First, that terminating Apon's employment

in response to his refusal to sign the Leadership Form – when he believed that his signing the form was contrary to state or federal transportation laws – violated § 833(1)(D) ("Section D") of the MWPA. Second, the Amended Complaint asserts that ABF terminated Apon in violation of § 833(1)(A) ("Section A") of the MWPA based on his report to Bell, his supervisor, of what he reasonably believed was a violation of transportation laws. ABF argues that the Amended Complaint fails to plead (1) a refusal to act that was protected by Section D because Apon has not identified what law he was directed to violate; and (2) a "report" protected by Section A because Apon's verbal refusal to sign the Leadership Form does not constitute a "report" protected by the MWPA. For the reasons that follow, I conclude that Apon has stated a plausible report claim under Section A, but not a plausible refusal to act claim under Section D of the MWPA.

The Amended Complaint also alleges a third basis for relief: that ABF's retaliation violated § 4633 of the MHRA ("Prohibition against Retaliation and Coercion"). 5 M.R.S.A. § 4633. In response to ABF's motion to dismiss, however, Apon concedes that there is no additional MHRA whistleblower liability authorized by § 4633 beyond what is authorized specifically by the MWPA, and he does not oppose ABF's Motion to Dismiss as to that asserted basis for relief. *See Costain*, 954 A.2d at 1053 (the MHRA provides the right of action for MWPA whistleblowers who have suffered retaliatory discharge or other adverse employment actions in violation of the MWPA). Accordingly, I grant the motion to dismiss as to the portion of Count I in the Amended Complaint that requests relief under § 4633 of the MHRA.

4

## A. Good Faith Refusal to Comply (Section D)

ABF challenges whether the Amended Complaint sufficiently alleges that Apon engaged in activity protected by Section D. Section D provides, in relevant part, that an employer may not discharge an employee where "[t]he employee acting in good faith has refused to carry out a directive to engage in activity that would be a violation of a law or rule adopted under the laws of this State, a political subdivision of this State or the United States . . . ." 26 M.R.S.A. § 833(1)(D). ABF contends that because the Amended Complaint does not identify a particular law or rule that would have been violated had Apon signed the Leadership Form, Apon has not pleaded a refusal to act that constitutes protected activity under Section D.

Apon argues that Section D does not require a plaintiff to plead or prove an actual violation of a law or rule in a complaint, and that even if it does, the Amended Complaint satisfies that requirement. Apon primarily cites to paragraph 12 of the Amended Complaint in support of his latter contention:

> 12. As set forth clearly in Exhibit 1, the Leadership Form was to be executed by an ABF "Branch Manager" or a "Linehaul Manager". The Leadership form required the express acknowledgment of ABF's responsibility and accountability with respect to federally mandated compliance with a number of provisions set forth in the Federal Motor Carrier Safety Act (FMCSA), including but not limited to the so-called "Electronic Logging Device" (ELD) rule of the FMCSA and related driver safety issues.

ECF No. 5 at ¶ 12. The Leadership Form referenced in paragraph 12 specifies that it is the duty of Branch Managers and Linehaul Managers to ensure that drivers comply with requirements regarding off-duty hours, meal breaks, inspections,

5

maximum hour restrictions, cycle violations, log requirements, and ELD malfunctions. Again, the Leadership Form does not mention Operations Supervisors.

Apon also cites to paragraph 14 of the Amended Complaint. It asserts that Apon "genuinely believed that executing the Leadership Form would be a violation of state or federal transportation laws, rules, or regulations and that his unauthorized signature would be considered deceptive, fraudulent, or unlawful." ECF No. 5 at ¶ 14. Apon argues that paragraphs 12 and 14, read together, identify the law or rule underlying his refusal to carry out Bell's directive that he sign the Leadership Form.

It is fair to infer from the Amended Complaint, considered together with the Leadership Form, that the form was intended to promote ABF's effort to comply with the federal ELD Rule. Several of the requirements listed in the Leadership Form relate to specific requirements of the ELD Rule. *Compare* ECF No. 6 *with* 49 C.F.R. § 395.3(a)(1)-(2) (establishing 10 hours off-duty and 14 hours on-duty requirements for drivers); *see also* Electronic Logging Devices and Hours of Service Supporting Documents, 80 Fed. Reg. 78292 (Dec. 16, 2015) (to be codified at 49 C.F.R. pts. 385, 386, 390, and 395) (stating that the ELD Rule provides: "Minimum performance and design standards for hours-of-service (HOS); electronic logging devices (ELDs); [and] requirements for the mandatory use of these devices by drivers currently required to prepare HOS records of duty status (RODS) . . . .").

Although the Leadership Form may be understood as promoting ABF's compliance with the ELD Rule, Apon offers no basis from which to infer that he would have violated that rule if he had signed the form. The Amended Complaint asserts

6

only that Apon "genuinely believed" that his signing the form would be "deceptive, fraudulent, or unlawful" because he was neither a Branch Manager nor a Linehaul Manager, the only two positions identified in the Form responsible within ABF to ensure compliance and authorized to sign the form. ECF No. 5 at ¶ 14. Section D of the MWPA, however, does not protect an employee who has refused to carry out a directive to engage in an activity that he *genuinely believes would be* a violation of a law or rule. Rather, it protects employees who, acting in good faith, refuse to carry out a directive or engage in an activity that "*would be* a violation of a law or rule[.]" 26 M.R.S.A. § 833(1)(D) (emphasis added).[1] The allegations in the Amended Complaint suggest that if he had signed the Leadership Form, Apon may have been saddled with responsibilities beyond his job description, but there are no allegations in the Amended Complaint from which to infer that his signing the form would have been a violation of a law or rule. Thus, the Amended Complaint fails to plead an activity that is protected under Section D because it does not allege facts from which to infer that if Apon had signed the form, he would have violated a law or rule.

The Amended Complaint therefore fails to state a claim for relief under Section D of the Maine Whistleblower Protection Act, 26 M.R.S.A. § 833(1)(D), and the Motion to Dismiss is granted with respect to that portion of Count I.

---

[1] Apon cites several cases to support the propositions that a plaintiff is not required to prove an actual violation of a law or rule pursuant to Section D and that a plaintiff's reasonable belief of illegality is sufficient. *See Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252 (1st Cir. 1999); *Couture v. AmeriGas Propane, Inc.*, No. 15-cv-529-NT, 2016 WL 5720715 (D. Me. 2016); *Capalbo v. Kris-Way Truck Leasing, Inc.*, 821 F. Supp. 2d 397 (D. Me. 2011). These cases are distinguishable. In *Higgins*, the court ruled only that when an employee *reports* what he perceives to be an illegal practice or activity in the context of Section A (or B), that practice or activity need not actually be illegal. 194 F.3d 261-62. *Couture* and *Capalbo* are also inapposite. In both cases, the question before the court was not whether a directed act would have been illegal, as the illegality of the law or rule at issue was assumed by both parties. *Couture*, 2016 WL 5720715 at * 3; *Capalbo*, 821 F. Supp. 2d at 403.

## B. Good Faith Report (Section A)

ABF also argues that Apon has not pleaded a *prima facie* case of retaliation under Section A of the MWPA. 26 M.R.S.A. § 833(1)(A). ABF argues that Apon's verbal opposition to signing the Leadership Form did not constitute a "report" within the meaning of Section A. ABF reasons that if Apon's "refusal" to sign the Leadership Form which is subject to Section D of the MWPA, also constitutes a "report" for purposes of Section A of the MWPA, then Section D is rendered superfluous because every refusal would also constitute an actionable report. However, Apon *has* pleaded facts indicating both a refusal pursuant to Section D and a separate report pursuant to Section A.

The Amended Complaint assertion of a "report" for purposes of Section A is set out in Paragraphs 15 and 18:

> 15. In response to Mr. Bell's directive for Plaintiff to sign the Leadership Form, Plaintiff told Mr. Bell that he had serious concerns about the Leadership Form, including most importantly the fact that Plaintiff was not a Branch Manager or Linehaul Manager. Plaintiff asked for clarification from Mr. Bell about the Leadership Form and asked to speak with Mr. Bell's supervisor . . . about his concerns.
>
> . . .
>
> 18. Plaintiff refused to sign the Leadership Form. He refused to carry out his employer's directive to engage in activity that Plaintiff reasonably believed would be unlawful and/or fraudulent.

ECF No. 5 at ¶¶ 15, 18. Thus, the Amended Complaint does not merely allege that Apon refused to sign the Leadership Form. Instead, it alleges that before refusing, Apon told his supervisor, Bell, that he wanted to express his concerns to Bell's supervisor. Accepting all well-pleaded facts as true and drawing all reasonable

8

inferences in Apon's favor, I conclude that Apon's request to speak to Bell's supervisor, although allegedly refused by Bell, constituted a substantial step toward making a report of what Apon believed was an unlawful demand by Bell, his immediate supervisor. Drawing all reasonable inferences in Apon's favor, the Amended Complaint does allege a "report" for purposes of Section A. I therefore deny ABF's Motion to Dismiss as to Apon's MWPA claim with respect to the Section A claim in Count I.

## IV. CONCLUSION

For the foregoing reasons, ABF's Motion to Dismiss (ECF No. 7) is **GRANTED** in part as to the Amended Complaint's claim for relief arising under 5 M.R.S.A. § 4633 of the Maine Human Rights Act and under 26 M.R.S.A. § 833(1)(D) of the Maine Whistleblowers Protection Act, and is otherwise **DENIED**.

**SO ORDERED.**

**Dated this 17th day of April, 2018.**

                                                **/s/ JON D. LEVY**
                                                **U.S. DISTRICT JUDGE**