# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | | |
|---|---|---|
| DONATO APON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:17-cv-00335-JDL |
| | ) | |
| ABF FREIGHT SYSTEMS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Donato Apon alleges that his former employer, ABF Freight Systems, Inc. ("ABF"), unlawfully fired him in violation of the Maine Whistleblowers' Protection Act ("MWPA"), 26 M.R.S.A. § 833(1)(A) (Westlaw through Ch. 112, and 114 to 169 of 2019 1st Reg. Sess. of 129th Leg.), for reporting what he thought was a directive to commit an illegal act. ABF moves for summary judgment (ECF No. 43). For the reasons that follow, ABF's motion is **GRANTED**.

## I. FACTUAL BACKGROUND

Apon worked for ABF for nearly thirty years, beginning in 1986 and continuing until his termination in February 2016. At the time of his termination, Apon was employed as an Operations Supervisor. As an Operations Supervisor, Apon's responsibilities included supervising incoming shipments, assigning drivers to deliveries, and monitoring drivers' hours of service. Apon reported to Derek Bell, the Branch Manager of ABF's Portland, Maine terminal. Bell reported to Zachary Lacombe, the Regional Vice President.

In 2016, ABF undertook an initiative to have all leadership employees in what ABF calls "terminal operations and linehaul" review and acknowledge their responsibilities for ensuring compliance with Department of Transportation ("DOT") requirements regarding hours of service and meals and breaks. As part of this initiative, ABF asked leadership employees to execute a form entitled "Leadership Responsibility Hours of Service and Meal Break Compliance" (the "Leadership Form"). The Leadership Form acknowledged the signatory's responsibility for enforcing certain requirements derived from the Federal Motor Carrier Safety Act ("FMCSA"), 49 U.S.C.A. § 31131, *et seq.* (West 2019). Leadership Form states that "[c]ompliance must be achieved through oversight, enforcement, and leadership of the Branch Managers and Linehaul Managers." ECF No. 1-1 at 1. Although the Leadership Form refers to Branch Managers and Linehaul Managers throughout, it makes no mention of Apon's job title: Operations Supervisor. *Id.* at 1-2.

On the morning of February 16, 2016, Bell gave Apon the Leadership Form to sign. Apon responded that he would "check it out." ECF No. 40-1 at 121. He did not ask to speak with anybody about the form. About an hour later, Bell asked Apon if he had signed the form. Apon replied that he had not, and that, in his words, he "had an issue with the form." *Id.* at 122. Apon believed that it might be illegal for him to sign the Leadership Form because the form described the responsibilities of Branch Managers and Linehaul Managers, and Apon was an Operations Supervisor. He feared that if he signed the form and it was then submitted to the DOT, it might constitute fraud in the eyes of the federal government. Apon also feared that his signing the form would violate ABF's code of ethics, which prohibits misrepresenting

who you are. However, he did not communicate these fears to Bell, and he did not ask to speak to anybody about the form at that time.

Later in the day, Bell again approached Apon to see if he had signed the form. Apon told Bell that he did not think he could sign the form because he was not a manager. As Apon recalls, Bell said: "[G]o ahead, you're a manager, why can't you sign it?" ECF No. 140-1 at 124. Apon reiterated that he was not a manager, said he needed more clarification, *id.*, but he did not ask to speak to anybody else about the form at that time.

Bell returned later to ask Apon for a third time whether he had signed the form. Apon responded by asking whether the form could be changed to reflect that he was not a manger, and also asked: "Can I talk to somebody above you, higher up? Can I talk to [Lacombe]? I'll call him. I need clarification." ECF No. 52 ¶ 54. Bell replied: "[Y]ou're not going to talk to anyone, give me your keys, you're going home." *Id.* ¶ 55. Apon left work as ordered. Upon the advice of his doctor, Apon did not return to work that week or the next. Apon found out he had been fired while he was still out on medical leave.

On March 9, 2016, Apon filed a Petition for Award with the Maine Worker's Compensation Board, claiming that he received a mental injury resulting from his termination, and that Bell's decision to terminate him was not made in good faith. The Administrative Law Judge ruled in favor of ABF.

## II. LEGAL ANALYSIS

Summary judgment is granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

3

matter of law." Fed. R. Civ. P. 56(a). A fact is material if "its existence or nonexistence has the potential to change the outcome of the suit." *Rando v. Leonard*, 826 F.3d 553, 556 (1st Cir. 2016) (quoting *Borges ex rel. S.M.B.W. v. Serrano-Isern*, 605 F.3d 1, 5 (1st Cir. 2010)). An issue is considered genuine "if the evidence of record permits a rational factfinder to resolve [the issue] in favor of either party . . . ." *Id.* (quoting *Borges*, 605 F.3d at 4.) The facts in the record are construed in the light most favorable to the nonmoving party and all reasonable inferences are resolved in the nonmoving party's favor. *Braga v. Genlyte Group, Inc.*, 420 F.3d 35, 38 (1st Cir. 2005).

For Apon's unlawful retaliation claim under § 833(1)(A) to survive summary judgment, Apon must make out a *prima facie* case, demonstrating that "(1) [he] engaged in activity protected by the [M]WPA; (2) [he] experienced an adverse employment action; and (3) a causal connection existed between the protected activity and the adverse employment action." *Brady v. Cumberland Cty.*, 126 A.3d 1145, 1150 (Me. 2015). The analysis ends there; unlike other employment discrimination claims, alleged violations of the MWPA are not subject to a three-step burden-shifting analysis. *See id.* at 1158-59 (explaining that the *McDonnell Douglas* framework does not apply to the summary judgment stage of MWPA retaliation cases). "If the evidence in the summary judgment record would allow a jury to find for the employee on each element of the employee's case, then the employer is not entitled to summary judgment." *Id.* at 1159.

The issue here is whether Apon has made the required showing to satisfy the first element of a *prima facie* case—that he engaged in activity protected by the

MWPA. Section 833(1)(A) of the MWPA prohibits an employer from discharging an employee because "[t]he employee, acting in good faith . . . reports orally or in writing to the employer or a public body what the employee has reasonable cause to believe is a violation of a law or rule adopted under the laws of this State, a political subdivision of this State or the United States." 26 M.R.S.A. § 833(1)(A). ABF argues that because the undisputed facts show that Apon never communicated his belief that signing the Leadership Form was illegal, he never made a "report" under § 833(1)(A) and therefore cannot show that he engaged in protected activity.[1]

"The Whistleblowers' Protection Act embodies a statutory public policy against discharge in retaliation for reporting illegal acts, a right to the discharged employee, and a remedial scheme to vindicate that right." *Bard v. Bath Iron Works Corp.*, 590 A.2d 152, 156 (Me. 1991). It follows that "[t]he MWPA 'does not protect every complaint' made by an employee," but only those that further the statute's purpose of deterring retaliation for reporting what an employee reasonably believes is an illegal act. *Bodman v. Maine, Dep't of Health & Human Servs.*, 787 F. Supp. 2d 89, 110 (D. Me. 2011) (quoting *Stewart-Dore v. Webber Hosp. Ass'n*, 13 A.3d 773, 776 (Me. 2011)). The reported condition, activity, or practice need not actually be illegal, and "an employee's reasonable belief that it crosses the line suffices, *as long as the*

---

[1] ABF moves for summary judgment on five alternative grounds: (1) Apon did not make a "report"—and, therefore, did not engage in protected activity—because he never told anyone he was hesitant to sign the form on the basis that he believed it was illegal; (2) even if Apon did make a report, it was of facts already known to ABF and was therefore not protected activity; (3) no reasonable person would have believed that signing the form was illegal; (4) the Maine Workers' Compensation Board made a preclusive factual finding that ABF fired Apon solely because of his refusal to sign the form; and (5) there is insufficient evidence of a causal connection between the attempted report and Apon's termination. Because I conclude that the undisputed material facts establish that Apon did not make a report that was protected activity, ABF's first basis for summary judgment is determinative and I do not address ABF's remaining arguments.

5

*complainant communicates that belief to his employer* in good faith." *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 261-62 (1st Cir. 1999) (emphasis added).

Thus, for an employee's conduct to fall within the protection of the MWPA, the purpose of which is to deter retaliation against employees who report what they reasonably believe to be illegal acts, the employee must communicate that he or she thinks the reported act is illegal. Put another way, "it is a basic prerequisite to a whistleblower protection claim that the plaintiff has actually blown the proverbial whistle." *Tripp v. Cole*, 2004 WL 2185840, at *4 (D. Me. Sept. 24, 2004) (concluding that "the whistleblower claim . . . lacks merit because [the plaintiff] never voiced any concern that he considered [the defendant's] request to be unlawful."), *report and recommendation adopted*, 2004 WL 2326391 (D. Me. Oct. 13, 2004), *aff'd*, 425 F.3d 5 (1st Cir. 2005); *see also Bodman*, 787 F. Supp. 2d at 110 (granting summary judgment in favor of employer where "there [was] nothing in the record to suggest that [the plaintiff] reported that she believed [the employer's conduct] was illegal or sexual harassment.").

The undisputed facts show that Apon never communicated to Bell or anyone else at ABF that he thought his signing the Leadership Form would be fraudulent or otherwise illegal, even though that was his belief. Over the course of the day on February 16, Apon had several conversations about the Leadership Form with Bell, his supervisor. During those conversations, Apon (1) indicated that he "had an issue with the form," (2) told Bell that he did not think he could sign the form because he was not a manager and that he needed more clarification, (3) asked whether the form could be changed to reflect that he was not a manager, and (4) asked if he could call

Bell's supervisor because he needed clarification. None of these statements explicitly or implicitly conveyed that Apon thought he was being asked to do something illegal.

The Supreme Court of New Hampshire, interpreting New Hampshire's nearly identical whistleblower statute, N.H. Rev. Stat. Ann. § 275-E:2 (Westlaw through Ch. 72 of 2019 Reg. Sess.)[2], has held that a "report" has been made "if a reasonable employer would have understood from an employee's complaint that the employee was reciting a violation of law." *In re Fred Fuller Oil Co.,* 144 N.H. 607, 611 (N.H. 2000); *see also Cluff-Landry v. Roman Catholic Bishop of Manchester*, 156 A.3d 147, 152-53 (N.H. 2017) (teacher had not sufficiently alleged a violation of the whistleblower protection act because a reasonable employer would not have understood her complaint of violent and disruptive behavior by a small child to constitute a report that the child had violated a criminal statute). Here, Apon's statements to Bell, viewed in the light most favorable to Apon, do not reasonably suggest that Apon was complaining about a possible violation of law. Having "an issue with the form," and seeking "clarification," did not reasonably signal a fear of illegality. Not every query about a work directive by an employee constitutes a report for the purposes of the MWPA. Here, Apon's statements to Bell indicated that he thought the form was intended to be signed by other employees holding the position of Branch Manager or Linehaul Manager, and that if he signed the form he would be

---

[2] The New Hampshire whistleblower statute reads, in relevant part:

> No employer shall . . . discharge . . . any employee . . . because . . . [t]he employee, in good faith, reports or causes to be reported, verbally or in writing, what the employee has reasonable cause to believe is a violation of any law or rule adopted under the laws of this state, a political subdivision of this state, or the United States[.]

N.H. Rev. Stat. Ann. § 275-E:2(I)(a).

misrepresenting himself as a "manager." However, in so communicating, Apon did not blow "the proverbial whistle" because he did not communicate or indicate that he reasonably believed that his signing the form would be unlawful.

The papers that comprise a summary judgment record are static, and the court has no separate means of looking beyond those papers to better understand the motivation or motivations behind an employer's decision to terminate a 30-year employee based on that employee's refusal, over the course of a single workday, to sign a form. The summary judgment record is sufficient, however, to resolve the far narrower question that controls Apon's right to relief under the Maine Whistleblower's Protection Act. Specifically, because it is undisputed that Apon did not communicate to his supervisor that he would not sign the Leadership Form because he believed that it would violate the law if he did, Apon cannot succeed on his whistleblower claim and ABF is entitled to summary judgment.

For the foregoing reasons, I conclude that Apon did not engage in protected activity and he has, therefore, failed to make out a *prima facie* case of unlawful retaliation under § 833(1)(A).

### III. CONCLUSION

Accordingly, it is **ORDERED** that ABF Freight Systems, Inc.'s Motion for Summary Judgment (ECF No. 43) is **GRANTED** and judgment shall enter in favor of ABF Freight Systems, Inc.

**SO ORDERED.**

**Dated this 19th day of June, 2019.**

                                            **/s/ JON D. LEVY**
                                      **CHIEF U.S. DISTRICT JUDGE**